MH:JAG:AAS
F.#2007R00092

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

   - against -

JAMES BATTISTA,
  also known as "Baba"
  and "Sheep," and
THOMAS MARTINO,

             Defendants.

- - - - - - - - - - - - - - - - - -X

I N D I C T M E N T

CR No. 08          86

(T. 18, U.S.C., §§ 371,
1084, 1349, 1623 and
3551 et seq.)

AMON, J.

REYES, M.J

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ FEB 0 8 2008 ★

BROOKLYN OFFICE

THE GRAND JURY CHARGES:

## INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

1. The National Basketball Association ("NBA"), which was founded in 1946 and has its headquarters in New York City, is a global sports and entertainment organization that includes, among other things, a men's professional basketball league of 30 teams located in major metropolitan areas throughout the United States and Canada. The NBA team owners, management, and players operate under the terms and conditions set by their agreements with the NBA.

2. The NBA employs approximately 60 referees who officiate pre-season, regular season, and playoff games between

NBA teams.  Each game has an officiating crew of three referees. NBA referees are subject to a collective bargaining agreement and to rules of conduct set by the NBA.  Those rules of conduct require that NBA referees conduct themselves according to the highest standards of honesty, integrity, and professionalism, as well as refrain from any conduct that might impair the faithful and thorough discharge of their duties.

3.  NBA referees are also subject to several levels of review.  For example, for each game, reports completed by the crew chief, who is typically the senior member of the officiating crew, are transmitted electronically to the NBA's Basketball Operations Division.  NBA rules require game reports to be "complete and accurate," and to reflect, among other things, any referee misconduct.

4.  Among other things, NBA referees are prohibited from having any involvement in sports betting or bookmaking. (The only exception to this rule is that NBA referees are permitted during the NBA off-season to place bets on horse races at racetracks, where legal.)  In particular, NBA referees are prohibited from placing bets on NBA games and from providing information to others for the purpose of assisting them to place bets.

5.    As a matter of policy and practice, the NBA does not disclose the identities of an officiating crew to the public, or to NBA teams, until game time.   The NBA creates master referee schedules setting forth the officiating crews for upcoming NBA games.   These schedules are not disclosed to the public or to NBA teams.   NBA referees are prohibited from disclosing upcoming referee assignments and other proprietary NBA information.   Also, NBA referees are prohibited from engaging in other employment without permission of the NBA.

6.    During the NBA season, professional bookmakers predict the team favored to win each NBA game and set a point spread by which the favorite is expected to win.   This prediction is also referred to as the "betting line."   If a bettor selects the favored team, the bettor wins if that team wins the game by the predicted point spread or by a greater number of points.   If a bettor selects the team that is not favored, the bettor wins if that team wins the game or loses by a lesser number of points than the predicted point spread.

<u>COUNT ONE</u>
(Conspiracy to Commit Wire Fraud)

7. The allegations of paragraphs one through six are realleged and incorporated as if fully set forth in this paragraph.

8. On or about and between December 1, 2006 and April 30, 2007, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JAMES BATTISTA, also known as "Baba" and "Sheep," and THOMAS MARTINO, together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud the NBA by depriving the NBA of the intangible right of honest services, and for the purpose of executing such scheme and artifice, transmitted and caused to be transmitted writings, signals and sounds by means of wire communication in interstate and foreign commerce, in violation of Title 18, United States Code, Sections 1343 and 1346.

9. It was part of the conspiracy that as to certain NBA games, including games he officiated, an NBA referee ("the NBA referee") provided a pick to BATTISTA and MARTINO as to which team should be bet.

10. It was further part of the conspiracy that the NBA referee received payment from BATTISTA and MARTINO for each correct pick. The NBA referee was not paid for an incorrect

4

pick.

11. It was further part of the conspiracy that the NBA referee used a telephone to contact BATTISTA and MARTINO to provide his picks for certain NBA games. Those communications were sometimes made in coded language.

12. It was further part of the conspiracy that in determining his picks for certain NBA games, the NBA referee would rely on, among other things, nonpublic and other information to which he had unique access by virtue of his position as an NBA referee. This information included his knowledge of (a) the officiating crews for upcoming NBA games, (b) the interactions between certain referees and certain players and team personnel, and (c) the physical condition of certain players. The NBA referee also compromised his objectivity as a referee because of his personal financial interest in the outcome of NBA games. In addition, the NBA referee concealed this scheme from the NBA and other referees in order to prevent its detection.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

5

<u>COUNT TWO</u>
(Conspiracy to Transmit Wagering Information)

13. The allegations of paragraphs one through six are realleged and incorporated as if fully set forth in this paragraph.

14. On or about and between December 1, 2006 and April 30, 2007, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JAMES BATTISTA, also known as "Baba" and "Sheep," and THOMAS MARTINO, together with others, being engaged in the business of betting and wagering, did knowingly and intentionally conspire to use a wire communication facility, to wit: a telephone, for the transmission in interstate and foreign commerce of bets and wagers and information assisting in the placing of bets and wagers on sporting events and contests, in violation of Title 18, United States Code, Section 1084.

<u>OVERT ACTS</u>

15. In furtherance of this conspiracy and in order to accomplish the objectives thereof, the defendants JAMES BATTISTA and THOMAS MARTINO, together with others, committed and caused to be committed, among others, the following overt acts:

a. On or about December 13, 2006, MARTINO spoke with the NBA referee by telephone regarding the NBA referee's pick for an NBA game.

b.    On or about December 14, 2006, BATTISTA and MARTINO met with the NBA referee in Pennsylvania and gave a cash payment to the NBA referee.

c.    On or about December 26, 2006, MARTINO spoke with the NBA referee by telephone regarding the NBA referee's pick for an NBA game.

d.    On or about March 11, 2007, MARTINO met with the NBA referee in Toronto, Canada, and MARTINO gave a cash payment to the NBA referee.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

## COUNT THREE
(Perjury)

16.   The allegations of paragraphs one through six are realleged and incorporated as if fully set forth in this paragraph.

17.   On or about May 30, 2007, in the Eastern District of New York, the defendant THOMAS MARTINO, having taken an oath to testify truthfully in a proceeding before a grand jury in the Eastern District of New York, did knowingly make false material declarations regarding his involvement in the conspiracies charged in Counts One and Two (underlined portions alleged as false):

7

> Q.   Can you give me an explanation of
>       why you so frequently have
>       conversations with [the NBA
>       referee] followed by calls with
>       Mr. Battista?
>
> A.   He always called me at inopportune
>       times.  I talk to everybody.  <u>It is
>       coincidental.</u>

18.   The aforesaid underscored testimony of MARTINO, as he then and there well knew and believed, was false in that the fact that MARTINO would frequently call the defendant JAMES BATTISTA after speaking with the NBA referee was not coincidental.

(Title 18, United States Code, Sections 1623 and 3551 <u>et</u> <u>seq</u>.)

<u>COUNT FOUR</u>
(Perjury)

19.   The allegations of paragraphs one through six are realleged and incorporated as if fully set forth in this paragraph.

20.   On or about May 30, 2007, in the Eastern District of New York, the defendant THOMAS MARTINO, having taken an oath to testify truthfully in a proceeding before a grand jury in the Eastern District of New York, did knowingly make false material declarations regarding his involvement in the conspiracies charged Counts One and Two (underlined portions alleged as false):

8

Q. Have you ever communicated any
information from [the NBA referee]
about a game to Mr. Battista?

A. <u>No.</u>

21. The aforesaid underscored testimony of MARTINO, as he then and there well knew and believed, was false in that MARTINO did communicate information about NBA games from the NBA referee to the defendant JAMES BATTISTA.

(Title 18, United States Code, Sections 1623 and 3551 <u>et</u> <u>seq</u>.)

A TRUE BILL

_____[redacted]_____
FOREPERSON

BENTON J. CAMPBELL
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

9

No._____          *Action:* _____

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL *Division*

## THE UNITED STATES OF AMERICA

*vs.*

*JAMES BATTISTA,*
*also known as "Baba" and "Sheep," and*
*THOMAS MARTINO,*

Defendant.

# INDICTMENT

(T. 18, U.S.C., §§ 371, 1349, 1623 and 3551 et seq.)

*A true bill.*

_____
                                                        *Foreman*

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 20* _____

_____
                                                        *Clerk*

*Bail, $* _____

_____

***Alexander Solomon , Assistant U.S. Attorney (718-254-6074)***

Case 1:08-cr-00086-CBA   Document 15   Filed 02/08/08   Page 10 of 11 PageID #: 40

**INFORMATION SHEET**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

1.  Title of Case: **United States v. James Battista, also known as "Baba" and "Sheep,"
    and Thomas Martino**

2.  Related Magistrate Docket Number(s): 07-M903                    **FILED**
        None ( )                                          IN CLERK'S OFFICE
                                                      U.S DISTRICT COURT E.D.N Y

3.  Arrest Date:  **8/15/07**                            ✱   FEB 0 8 2008   ✲
4.  Nature of offense(s):  ☒     Felony                     BROOKLYN OFFICE
                           ☐     Misdemeanor

5.  Related Cases - Title and Docket No(s).  (Pursuant to Rule 50.3 of the
    Local E.D.N.Y. Division of Business Rules): **United States v. Timothy Donaghy, Cr.
    No. 07-587 (CBA)**

6.  Projected Length of Trial:    Less than 6 weeks    (X)
                                  More than 6 weeks    ( )

7.  County in which crime was allegedly committed: **Kings**
    (Pursuant to Rule 50.1(d) of the Local E.D.N.Y. Division of Business Rules)

8.  Has this indictment/information been ordered sealed?      ( ) Yes  (X) No

9.  Have arrest warrants been ordered?                        (X) Yes  ( ) No

BENTON J. CAMPBELL
UNITED STATES ATTORNEY

By:  _____

Alexander A. Solomon
Assistant U.S. Attorney
718-254-6074

Rev. 3/22/01

08 CR 86
CBA
RER